Jill Gibson, OSB #973581
Gibson Law Firm, LLC
121 SW Morrison St., 11th Floor
Portland, OR 97204
Tel: 503.686.0486
Fax: 866.511.2585
Email: jill@gibsonlawfirm.org

James G. Abernathy, OSB #161867
JAbernathy@freedomfoundation.com
Rebekah C. Millard, OSB #121199
RMillard@freedomfoundation.com
PO Box 552
Olympia, WA  98507
Tel: 360.956.3482
Fax: 360.352.1874

Milton L. Chappell, DCB #936153 (*pro hac vice* pending)
8001 Braddock Rd, Suite 600
Springfield, VA 22151
Tel: 703-321-8510
Fax: 703-321-9319
Email: mlc@nrtw.org

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **CHE' S. COOK**; **CLIFFORD H. ELLIOTT**; **J. SCOTT ENGLISH**; **BETHANY HARRINGTON**; **WILLIAM LEHNER**; **CARMEN LEWIS**; and **TRUDY METZGER**, as individuals,<br><br>Plaintiffs, | Case No.: 6:18-cv-1085<br><br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT OREGON AFSCME COUNCIL 75'S MOTION FOR JUDGMENT ON THE PLEADINGS OR MOTION FOR SUMMARY JUDGMENT** |

v.                                                    Request for Oral Argument

**KATE BROWN**, in her official capacity as
Governor of the State of Oregon; **KATY
COBA**, in her official capacity as Director of
the Oregon Department of Administrative
Services; and **OREGON AMERICAN
FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES,
COUNCIL 75**, a labor organization,

                        Defendants.

_____

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................ iv

**INTRODUCTION** ............................................................................................... 1

**LEGAL STANDARD** ......................................................................................... 3

**ARGUMENT** ...................................................................................................... 4

   **I.  Plaintiffs can demonstrate sufficient facts to establish AFSCME 75's knowledge of the
unlawfulness of their actions.** ...................................................................... 4

     *A. A strong line of caselaw indicated the unconstitutionality of forced-fee provisions.* ......... 5

     *B. AFSCME 75 expected and planned for the outcome in Janus.* ........................................ 6

     *C. Use of indemnity clauses indicates legal uncertainty surrounding forced-fees.* ............... 6

   **II.  There is no good faith defense to violations of First Amendment rights or the unique
relief Plaintiffs seek for those violations.** ................................................... 7

     *A.  The good faith defense to a constitutional tort is only available if an analogous common
law tort in 1871 contained an intent element.* ................................................................. 8

     *B.  There is no basis for a good faith defense to First Amendment violations because there
is no analogous tort at common law that involve a defendant's intent and First Amendment
cases do not require intent.* .............................................................................................. 11

     *C. Additional reasons counsel against creating a good faith defense to the relief Plaintiffs
seek for the First Amendment violations they suffered.* .................................................. 13

   **III.  Alternatively, if the good faith defense were applied to First Amendment violations,
AFSCME 75 cannot meet *Clement* standards.** ......................................... 15

*A.   AFSCME 75 took no reasonable steps to comply with the law although it had reason to suspect constitutional defect.* ............................................................................... 16

*B.   AFSCME 75 was not acting under "close government supervision," and was in fact in possession of all relevant facts.* .......................................................................... 17

**IV.  Plaintiffs' request for declaratory relief and restitution for AFSCME 75's First Amendment violations prior to *Janus* presents a live controversy – not rendered moot by AFSCME 75's voluntary compliance with *Janus* after June 27, 2018.** ............................ 18

**CONCLUSION** ............................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092 (9th Cir.2003)................................ 4

*Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999) ................................................................ 15

*Ambrose v. Coffey*, 696 F.Supp.2d 1119 (E.D. Cal. 2016) ........................................... 4

*Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008).............................. 12, 15

*Crue v. Aiken*, 370 F.3d 668 (7th Cir. 2004)................................................................ 18

*Cty. of Los Angeles v. Davis*, 440 U.S. 625 (1979)..................................................... 18

*Danielson v.Inslee*, No. 3:18-cv-5206-RJB, 2018 WL 3917937 (W.D. Wash. Aug. 16, 2018)... 19

*Dean v. Trans World Airlines, Inc.*, 924 F.2d 805 (9th Cir. 1991).............................. 14

*Ellis v. BRAC*, 466 U.S. 435 (1984).......................................................................... 12

*Friedrichs*, 576 U.S._, 136 S. Ct. 1083 (2016) ........................................................... 5

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ......................... 15

*Greenwich Citizens Comm., Inc. v. Counties of Warren &*
*Washington Indus. Dev. Agency*, 77 F.3d 26 (2d Cir. 1996) ................................ 9, 11

*Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993) ................................. 3

*Harris v. Quinn*, 134 S. Ct. 2618 (2014) ................................................................. 5, 16

*Hoffman v. Inslee*, No. C14-200-MJP, 2016 WL 6126016
(W.D. Wash. Oct. 20, 2016) ................................................................................. 7, 13

*Imbler v. Pachtman*, 424 U.S. 409 (1976) .................................................................... 9

*Janus v. AFSCME, Council 31, _U.S.,_,138 S. Ct. 2448 (2018)........................... passim

*Jarvis v. Cuomo*, 660 F.App'x 72 (2d Cir. 2016) ..................................................... 7, 13

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994) ............ 12

*Knox v. SEIU, Local 1000*, 567 U.S. 298 (2012).............................................. 5, 12, 16

*Lewis v. McCracken*, 782 F.Supp.2d 702 (S.D. Ind. 2011) ........................................ 7

*Lowary v. Lexington Local Bd. of Educ.*, 903 F.2d 422 (6th Cir. 1990)..................... 14

*Lugar v. Edmondson oil Co.*, 457 U.S. 922 (1982) .................................................... 14

*Murdock v. Pennsylvania*, 319 U.S. 105 (1943).......................................................... 13

*N.A.A.C.P., Western Region v. City of Richmond*, 743 F.2d 1346 (9th Cir. 1984)....... 19

*Nemo v. City of Portland*, 910 F. Supp. 491 (Dist. Or. 1995) ................................... 7, 8

*OSU Student All. v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ........................................ 9, 11

*Owen v. City of Independence*, 445 U.S. 622  (1980)..................................................... 9

*Owns v. Kaiser Foundation Health Plan, Inc., A California Corporation,*
244 F.3d 708 (2001).............................................................................................. 3

*Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996) ............................... 3, 11, 12, 16

*Powell v. McCormack*, 395 U.S. 486 (1969) .............................................................. 18

*Rehberg v. Paulk*, 566 U.S. 356 (2012)................................................................... 9, 11

*Robinson v. City of San Bernardino Police Dept.*, 992 F.Supp. 1198 (C.D. Cal. 1998) ............... 4

*United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995) .......................... 18

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953)................................................ 19

*Vector Research, Inc. v. Howard & Howard Attorneys PC,*
76 F.3d 692(6th Cir. 1996) ..................................................................................... 7

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ..................................... 14

*Waters v. Ricketts*, 798 F.3d 682 (8th Cir. 2015)....................................................... 18

*Winner v. Rauner*, No. 15 CV 7213, 2016 WL 7374258 (N.D. Ill. Dec. 20, 2016) ................. 7, 13

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ................................................................. 18

*Wyatt v. Cole*, 504 U.S. 158 (1992) ................................................................. 9, 10, 16
*Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993) ......................................................... 11, 12
*Yohn v. Cal. Teachers Ass'n*, No. 8:17-cv-00202-JLS-DFM (C.D. Cal. Sept. 28, 2018) ........... 19

**Statutes**

42 U.S.C. § 1983 .................................................................................................... 3
Fed. R. Civ. P. 56 .................................................................................................. 4
Fed. R. Civ. Pro. 12 .............................................................................................. 2
ORS 243.650(1) ..................................................................................................... 3
ORS 243.672(c) ..................................................................................................... 3
ORS 292.055(5) ..................................................................................................... 3

The motion for judgment on the pleadings or motion for summary judgment should be denied for the following reasons: (1) Plaintiffs have plead sufficient facts to establish defendants' knowing violation of Plaintiffs' constitutional rights; (2) the good faith defense is unavailable for First Amendment violations, which occurred here; (3) the good faith defense is unavailable under controlling Ninth Circuit precedent; and (4) these claims are not rendered moot by defendant's voluntary compliance.

## INTRODUCTION

A violation of the right to Free Speech is a unique and severe constitutional harm – particularly when the violation is in the form of compelled speech. Compelled speech demeans the speaker and forces them to betray their convictions and to "endorse ideas they find objectionable." *Janus v. AFSCME, Council 31,* _U.S.,_,138 S. Ct. 2448, 2464 (2018).

*Janus* establishes that Plaintiffs, as public employees, have been demeaned by forced participation in speech with which they disagree for years by being forced to pay compulsory fees[1] to Defendant (AFSCME 75).[2] *Id.* at 2478, 2486. Collectively, this money represents

---

[1] These fees are often referred to as "fair-share" fees in Union Collective Bargaining Agreements.

[2] There is no question that *Janus* applies retroactively and establishes the law in effect for the period covered by this case, even though that period predates the *Janus* decision. "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. . . ." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752 (1995) (Seven Justices held: "*Harper* [the third tax case] overruled *Chevron Oil* insofar as the case (selectively) permitted the prospective-only application of a new rule of law"). Thus, in applying the law, including the First Amendment, the Supreme Court declares what the law *already is*, not what it shall be. *Harper*, 509 U.S. at 106-07 (Scalia, J., concurring).

thousands of dollars that have been taken from Plaintiffs and redirected to AFSCME 75's coffers without Plaintiffs' consent and against their will. *Janus* righted a wrong that had continued for more than four decades – the unlawful appropriation of Plaintiffs' money for political purposes with which they disagree. *Id.* at 2486.

Plaintiffs bring this action for the violation of their constitutional rights seeking damages or restitution of funds that were unconstitutionally taken from them without their consent for the period of time allowed by the applicable statute of limitations. Compared with the windfall AFSCME 75 has obtained over the past four decades, Plaintiffs' two to six year request is modest indeed.

In its motion for judgment on the pleadings or for summary judgment, AFSCME 75 claims that it should be allowed to keep Plaintiffs' money because it mistakenly believed it were entitled to the money, and it would be unjust to require it to refund the monies it took in "good faith." *See* Mem. P. & A. Supp. Def. AFSCME COUNSCIL 75's Mot. for Judg. on Plead. Or Mot. Sum. Judge., 11-17, (hereinafter "AFSCME 75 Br."). AFSCME 75 further claims that Plaintiffs' claims are moot since its unlawful withholding of compulsory fees has ceased. AFSCME 75 Br. at 7-10. AFSCME 75 brings its motions under Fed. R. Civ. Pro. 12 and 56. AFSCME 75 Br. at 2.

The court should deny AFSCME 75's motion for judgment on the pleadings because Plaintiffs have plead sufficient facts to establish defendants' violation of Plaintiffs' constitutional rights; because the good faith defense is unavailable under circumstances such as this; and because these claims involve damages, they are not rendered moot by defendant's "voluntary" prospective compliance with *Janus*. The court should deny AFSCME 75's motion for summary

judgment since there are disputed issues of fact that impact the applicability of the asserted good

faith defense, and since the issues are not moot.

Section 1983 provides that "[e]very person who, under color of any statute ... of any State

... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C.

§ 1983. *Pinsky v. Duncan*, 79 F.3d 306, 311 (2d Cir. 1996). And Section 1983 applies to private

parties too, when they act under color of state law. *See Lugar v. Edmondson Oil Co.*, 457 U.S.

922 (1982).

Here, AFSCME 75 acted under color of state law, *e.g.*, ORS 243.650(1); ORS

243.672(c); and ORS 292.055(5), to collect forced fees from Plaintiffs. The Supreme Court has

held that forced fees like these violate the First Amendment's prohibition against compelled

speech and association. *Janus*, 138 S. Ct. at 2486. AFSCME 75 does not dispute that forced fees

and Oregon's forced fees statutes violate the First Amendment in light of *Janus*. *See* AFSCME

75 Br. at 2. Knowing that *Janus must* be applied retroactively, *see Harper v. Virginia*

*Department of Taxation*, 509 U.S. 86 (1993), AFSCME 75, instead, claims it may, nevertheless,

invoke a good faith defense to its admitted violation of the First Amendment. AFSCME Br. at

14-18.

## LEGAL STANDARD

Judgement on the pleadings under Rule 12(c) is appropriate only "when, taking all the

allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."

*Owns v. Kaiser Foundation Health Plan, Inc.*, *A California Corporation*, 244 F.3d 708, 713

(2001). Moreover, on a motion for summary judgment, the court must determine, viewing the

evidence in the light most favorable to the nonmoving party, "whether there are any genuine

issues of material fact or whether the moving party is entitled to judgment as a matter of law."

*ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1096-97 (9th Cir.2003); Fed. R. Civ. P. 56.

## ARGUMENT

### I. Plaintiffs can demonstrate sufficient facts to establish AFSCME 75's knowledge of the unlawfulness of their actions.

AFSCME 75's leadership was well aware of the legal challenges to its forced fee collection, including the pendency of the *Janus* case before the United States Supreme Court. *See* Declaration of Jill Gibson in Support of Plaintiff's Response to Defendant Oregon AFSCME Council 75's Motion for Judgment on the Pleadings or for Summary Judgment, filed herewith (hereinafter Gibson Decl.). AFSCME 75 made no secret of the fact that it thought the United States Supreme Court would rule against mandatory fees. In fact, AFSCME 75 publicly discussed its fears in this regard and sought to rally support for the union in the face of the loss of mandatory fees. *See* Gibson Decl. ¶2, Exhibits A-I.

AFSCME claims it is entitled to dismissal of this claim because it undertook its actions in "good faith." AFSCME 75 Br. at 14-18. It is unnecessary to prove that defendants had subjective knowledge of the unlawfulness of their conduct in order to defeat a good faith defense for a claim based on the First Amendment. *See* Section II, *infra*. However, if the Plaintiff alleges facts establishing defendant's subjective knowledge of the unlawfulness of its conduct, the defense is defeated, and defendant cannot prevail on a good faith defense. See *Ambrose v. Coffey*, 696 F.Supp.2d 1119,1139-40 (E.D. Cal. 2016); *Robinson v. City of San Bernardino Police Dept.*, 992 F.Supp. 1198, 1207 (C.D. Cal. 1998). Plaintiffs present facts demonstrating AFSCME 75's subjective knowledge of the unlawfulness of their conduct.

*A. A strong line of caselaw indicated the unconstitutionality of forced-fee provisions.*

Plaintiffs can show that AFSCME 75 in fact had subjective knowledge of the legal questionability of its conduct by showing facts establishing AFSCME 75 knew, or should have known of the unlawfulness of their conduct in forcing Plaintiffs to pay fees as a condition of employment. Complaint at ¶¶ 26-35 (ECF No. 1). The forced payment was directed to collective-bargaining activities which are no less political than direct lobbying or electioneering (Complaint at ¶ 30 (EFC No. 1), quoting *Harris v. Quinn*, 134 S. Ct. 2618, 2632-33 (2014)). Since at least 2012, the continued extraction of forced fees clearly violated Plaintiffs' free speech rights and "public-sector unions [including AFSCME here,] have been on notice … regarding this Court's misgivings about *Abood*." *Janus*, 138 S. Ct. at 2484. In the meantime, AFSCME 75, among other unions, has received a "considerable windfall… for the past 41 years. It is hard to estimate how many billions of dollars have been taken from nonmembers and transferred to public-sector unions in violation of the First Amendment." *Janus* 138 S. Ct. at 2486. As the Supreme Court recognized, employees forced to pay compulsory fees have been victimized for the past four decades. AFSME 75 was aware of the Court's recent rulings, and the cases pending before the Court. *See* Gibson Decl. at ¶ 2, Exhibits A-I.

Unions, including AFSCME 75, have been on notice for years regarding the legal uncertainty of forced fees.  *Janus*, 138 S. Ct. at 2486. In 2012, the Supreme Court considered the *Knox* case, in which it stated that *Abood* was a "First Amendment 'anomaly.'" *Id.* (quoting *Knox v. SEIU, Local 1000*, 567 U.S. 298, 311 (2012) *Knox*, 567 U.S. at 311). A mere two years later in *Harris*, the Court "cataloged Abood's many weaknesses." *Id.* (criticizing *Harris*). Twelve months later, the Court granted certiorari in *Friedrichs v. California Teachers Association* (135

S.Ct. 2933) on the question of whether *Abood* should be overruled and then split 4-4 on that issue. *Janus* 138 S. Ct. at 2485 (citing *Friedrichs*, 576 U.S._, 136 S. Ct. 1083 (2016)).

Thus, since 2012, any public-sector union, including AFCME 75, seeking an "agency-fee" provision in a collective-bargaining agreement understood that the constitutionality of such a provision was uncertain. *Janus* at 2486; Gibson Decl. ¶2, Exhibits A-I. Yet AFSCME 75 "rolled the dice" and continued to collect the fees in reckless disregard of Plaintiffs' rights. Thus, AFSCME 75 cannot claim even an equitable basis for acting in "good faith" or that it would be unjust to hold it liable for damages under Section 1983.

> ### B. AFSCME 75 expected and planned for the outcome in Janus.

Specifically, AFSCME 75 planned for the outcome in *Janus* long before the decision was handed-down. *See* Gibson Decl. at ¶2 Exhibit A.  On December 2, 2015, AFSCME 75 posted on its website, www.oregonafscme.org as follows:

> The 2016 budget will be built around the assumption that the Supreme Court will issue an adverse ruling in the case Friedrichs v. California Teachers Association sometime in the next 7-8 months. If you haven't heard of this case, ask your staff rep about it. This case has the potential of destroying unions in the U.S. and we should all be preparing for its effects, both in our locals and in Oregon AFSCME. None of us can afford to do "business as usual" any longer.

Gibson Decl., ¶3, Exhibit A.  AFSCME 75 knew full-well that its practices were unlawful and would be declared so by the Court. They cannot now claim "good faith" or ignorance.

> ### C. Use of indemnity clauses indicates legal uncertainty surrounding forced-fees.

Finally, the very language in the Collective Bargaining Agreements (CBAs) AFSCME 75 and its local affiliates entered with Plaintiffs' employers demonstrate that AFSCME 75 was

aware of the legal uncertainty of forced fee agreements. In every current CBA, AFSCME 75 included an "indemnity" provision such as the following:

> Article 3 Section 8. Fair Share.
>
> The Union shall indemnify and save the Agency harmless against any and all claims,
>
> damages suits or other forms of liability which may arise out of any action taken or not
>
> taken by the Agency for the purpose of complying with the provisions of this section.

Gibson Decl. at ¶3 (citing https://www.oregonafscme.org/docs/contracts/DOC_Security.pdf (last visited December 6, 2018)). If AFSCME 75 and their respective bargaining partners did not foresee the legal challenges (and their likely outcome), what need would there be for an indemnity provision? It should be noted that these indemnification agreements apply only to the forced fee clauses, not the CBA as a whole. AFSCME's insertion of this language is yet one more piece of evidence of its understanding of the legal instability of forced fee schemes.

## II. There is no good faith defense to violations of First Amendment rights or the unique relief Plaintiffs seek for those violations.

The Supreme Court has not permitted a good faith defense to First Amendment violations. Lower courts that have, are wrong for doing so, but even if they were right, those cases do not support the application of a good faith defense in this case for AFSCME 75. AFSCME 75 claims that the good faith defense has been repeatedly applied to First Amendment claims. AFSCME Br. at 14 note 5, citing *Vector Research, Inc. v. Howard & Howard Attorneys PC*, 76 F.3d 692, 698-99 (6th Cir. 1996); *Jarvis v. Cuomo*, 660 F.App'x 72, 75-76 (2d Cir. 2016), cert. denied, 137 S.Ct. 1204 (2017); *Winner v. Rauner*, No. 15 CV 7213, 2016 WL 7374258, at *5-6 (N.D. Ill. Dec. 20, 2016); *Hoffman v. Inslee, No. C14-200-MJP*, 2016 WL 6126016, at *4 (W.D. Wash. Oct. 20, 2016); *Lewis v. McCracken*, 782 F.Supp.2d 702, 714-15

(S.D. Ind. 2011); *Nemo v. City of Portland*, 910 F. Supp. 491 (Dist. Or. 1995). AFSCME 75,

however, fails to acknowledge three essential points about these cases.

First, these cases do not apply a careful First Amendment analysis – they merely

perfunctorily and arbitrarily extend the good faith defense without a consideration of the specific

facts at issue. Second, the evidence presented in these cases makes them easily distinguishable

from Plaintiff's situation, as Plaintiffs have presented clear facts indicating AFSCME 75's actual

knowledge that their conduct was of dubious legality. *See* Section I, *supra*; Gibson Decl. at ¶2,

Exhibits A-I.  Finally, these cases do not present binding precedent since they are from other

jurisdictions or from district courts.

For example, in *Nemo*, the Oregon District Court considered a First Amendment

challenge to a speech regulation in a public park.[3] While the court applied a good faith defense to

an individual employee, it refused to apply the good faith defense to his employer—a private

company that provided park services—because while the organization was essentially acting for

the municipality, it was relying on its own policy and, thus, there was no good faith defense

available. *Nemo,* 910 F. Supp.  at 499. *Nemo* does not stand for the broad proposition AFSCME

75 claims, that there is somehow a good faith defense to all constitutional claims, including First

Amendment claims, for private organizations. AFSCME 75 Br. at 13.

> A.  *The good faith defense to a constitutional tort is only available if*
> *an analogous common law tort in 1871 contained an intent*
> *element.*

Defendant has benefited from years of financial windfall from a violation of Plaintiffs'

First Amendment rights. *See Janus*, 138 S. Ct. at 2486 ("It is hard to estimate how many billions

---

[3] This case pre-dates the Ninth Circuit's decision in *Clement v. City of Glendale*, 518 F.3d 1090
(9th Cir. 2008), which sets out the parameters for an analysis of the good faith defense.

of dollars have been taken from nonmembers and transferred to public-sector unions in violation of the First Amendment."). On its face, Section 1983 does not mention any immunities to suit or defenses to liability. *See Wyatt v. Cole*, 504 U.S. 158, 163 (1992) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). Nor does it require "that a defendant have [sic] acted with any particular state of mind beyond that required to establish a violation of the underlying constitutional right." *Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 30 (2d Cir. 1996). For a good faith defense "[t]he question in each case therefore becomes whether the underlying constitutional right contains any state-of-mind requirement." *Id.* 77 F.3d at 30; *OSU Student All. v. Ray*, 699 F.3d 1053, 1075 (9th Cir. 2012).

To answer this, courts look, in part, to common law torts in 1871 (the year Section 1983 was enacted) for analogies to the constitutional violation to determine the elements, immunities, and defenses in a constitutional tort claim. *See Rehberg v. Paulk*, 566 U.S. 356, 362-63 (2012); *Wyatt*, 504 U.S. at 164. For example, an immunity from suit is available for state actors if the "tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided [in § 1983] had it wished to abolish the doctrine." *Wyatt*, 504 U.S. at 163-64 (quoting *Owen v. City of Independence*, 445 U.S. 622, 637 (1980)). The results of this inquiry vary depending on the underlying claim and the identity of the defendant. *See Owen*, 445 U.S. at 637-38 (reviewing cases). For example, "local police officers were held to enjoy a 'good faith and probable cause' defense to § 1983 suits similar to that which existed in false arrest actions at common law," *id.* (citation omitted), but a "municipality may not assert the good faith of its officers or agents as a defense to liability under §1983" because "there is no tradition of immunity for municipal

corporations." *Id.* at 638.

As for private parties, like AFSCME 75, the Supreme Court in *Wyatt* held that private actors may not invoke immunity from Section 1983 suits at all. 504 U.S. at 168. There, a private defendant tried to claim immunity from a property owner's Section 1983 claim for damages that resulted from the defendant's use of a replevin statute that was later held to violate due process. *Id.* at 160-61. The Court reiterated the rule that it looks "to the most closely analogous torts" at common law to identify if an immunity is available for the constitutional tort claim. *Id.* at 164.

The Court agreed with the defendant that the "malicious prosecution and abuse of process" common law torts most closely mirrored a procedural due process violation. *Id.* at 164. The defendant then claimed that at common law a malicious prosecution action could be defended by showing the defendant acted in "good faith" on a statute it "reasonably believed was valid." *Id.* at 165. But the Court held that regardless of this common law support, immunity from suit is available only to state actors. *Id.* As AFSCME 75 points out (AFSCME 75 Br. at 12), the Court stated in dicta that "we do not foreclose the possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith and/or probable cause." *Id.* at 169. That issue was not before the Court, so it left it for "another day." *Id.* Since then, that other day has not occurred, and the Court has still not ruled on whether there is a good faith defense for private parties that violate constitutional rights, much less the First Amendment.

Therefore, *Wyatt* does not stand for the sweeping proposition that AFSCME 75 claims it does, *i.e.*, there is always a good faith defense to constitutional violations committed by a private party (AFSCME 75 Br. at 12-13). Even Justice Kennedy's concurrence in *Wyatt* emphasized the need to look to the common law to see if a defense is available at all. *Wyatt*, 504 U.S. at 171-72 ("[W]e may not transform what existed at common law based on our notions of policy or

efficiency.)

Similarly, the Second Circuit in *Pinsky* followed *Wyatt* by allowing a private party sued under Section 1983 to claim a good faith defense only if the most analogous common law tort allowed a defendant to claim good faith reliance on state law. *Pinsky*, 79 F.3d 306, 311-12 (2d Cir. 1996); *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993). Thus, before a court allows a private party to raise a good faith defense, if appropriate, it must look to see if there is a common law analogy to the constitutional violation at hand, and whether the elements of that common law tort included a defendant's state of mind.

   B. *There is no basis for a good faith defense to First Amendment violations because there is no analogous tort at common law that involve a defendant's intent and First Amendment cases do not require intent.*

There are no common law tort analogies to a First Amendment free speech violation. This is not surprising because Section 1983 is not "simply a federalized amalgamation of pre-existing common-law claims." *Rehberg v. Paulk*, 566 U.S. 356, 366 (2012). "It is broader in that it reaches constitutional and statutory violations that do not correspond to any previously known tort." *Id.* Indeed, courts have developed First Amendment free speech jurisprudence based on their interpretation of the First Amendment, not the common law. And this jurisprudence (except for retaliation cases) does not require proof of the defendant's specific intent or state of mind. *See OSU Student All. v. Ray*, 699 F.3d 1053, 1073-75 (9th Cir. 2012); *Greenwich Citizens Comm.*, 77 F.3d at 31-32.

Here, Plaintiffs' First Amendment claim is unlike the cases cited by AFSCME 75 that turn on a defendant's state of mind. AFSCME 75 Br. at 13. *Pinsky* involved a Section 1983 action to recover damages from a private party who used an ex parte attachment statute, which was later found to violate due process rights, not the First Amendment, to attach the Plaintiff's

property. 79 F.3d 306, 313 (2d Cir. 1996). In considering whether to allow the private party a defense to liability, the court found that "malicious prosecution is the most closely analogous tort" to the due process violation. *Id.* at 312.

Thus, the court looked to the tort of malicious prosecution "for the elements that must be established in order for [the Plaintiff] to prevail on his § 1983 damages claim." *Id.* These elements included, "want of probable cause" and "malice." *Id.* The court then observed that at common law a Plaintiff could establish these elements by proving the defendant "knew or should have known" that the statute it relied upon was invalid. *Id.* (quoting *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993). As a result, the court concluded its "new rule to govern damage claims for due process violations under § 1983 where the violation arises from a private party's invocation of a state's statutory remedy" required this showing. *Id.* at 313.

Other cases cited by AFSCME 75 that recognized a good faith defense also involved attachment and other ex parte seizures that violate due process, not the First Amendment. AFSCME 75 Brief at 13. (citing *Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008); *Vector Research, Inc. v. Howard & Howard Attorneys PC*, 76 F.3d 692, 698-99 (6th Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1276 (3d Cir. 1994); *Wyatt*, 994 F.2d at 1118).

But unlike those cases, Free Speech violations pose unique and severe constitutional harms. Compelled speech, including forced payment of fees, forces the compelled speakers to "betray[] their convictions," by forcing them to "endorse ideas they find objectionable." *Janus*, 138 S. Ct. at 2464. As the Supreme Court observed in *Janus*, this is "always demeaning." *Id. See also Knox*, 567 U.S. 298, 310-11 (2012) (quoting *Ellis v. BRAC*, 466 U.S. 435, 455 (1984)) ("[C]ompulsory fees constitute a form of compelled speech and association that imposes a

'significant impingement on First Amendment rights,'" because they force an individual "'to

support financially an organization with whose principles and demands he may disagree.'").

     Thus, AFSCME 75 violated Plaintiffs' First Amendment rights when its forced fee

seizures compelled Plaintiffs to support AFSCME 75 and its expressive activities against

Plaintiffs' will. It is immaterial whether AFSCME 75 seized the providers' money in "good

faith" or "bad faith." The constitutional violation was complete the moment AFSCME 75 seized

Plaintiffs' wages and forced the providers to support the organization and its speech regardless of

their intentions or motives for doing so.[4]

     In sum, there is no common law basis for a good faith defense to First Amendment

violations, and courts do not look at a defendant's state of mind in deciding a First Amendment

claim. Thus, a good faith defense against First Amendment speech violation should not be

recognized here.

    *C. Additional reasons counsel against creating a good faith defense to the relief*
       *Plaintiffs seek for the First Amendment violations they suffered.*

     Three additional reasons counsel against finding that a private defendant can raise a

good faith defense to First Amendment claims. First, the defense is inequitable because it

would deny victims of First Amendment violations relief for injuries wrongfully inflicted upon

---

[4]Although the Second Circuit in *Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016), held, prior to *Janus*, that a good faith defense was available to First Amendment claims, including those involving forced fees, that case is not binding and is unpublished. Nor should it be considered persuasive. *Jarvis* wrongly assumed that a good faith defense is always available to a private defendant sued under Section 1983 no matter the underlying claim. It thereby departed from precedents such as *Pinsky*, which only allowed a good faith defense because an analogous common law tort in 1871 included elements that turned on a defendant's state of mind (good or bad faith). Other cases cited by AFSCME 75 on this point are also not binding and failed to engage in the common law historical analysis required for First Amendment claims. AFSCME Brief at 16 (citing *Winner v. Rauner*, No. 15 CV 7213, 2016 WL 7374258, at *5- 6 (N.D. Ill. Dec. 20, 2016); *Hoffman v. Inslee*, No. C14-200-MJP, 2016 WL 6126016, at *4 (W.D. Wash. Oct. 20, 2016)).

them. And this is especially damaging to society because free speech enjoys a "preferred position" in the constitutional hierarchy. *Murdock v. Pennsylvania*, 319 U.S. 105, 115 (1943), *see, e.g.*, *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.").

This case illustrates the point. Before June 2018, AFSCME 75 seized money from thousands of state employees without their consent and in violation of their First Amendment rights. If this Court accepts AFSCME 75's good faith defense, all of these victims would never have any recourse to recover monies wrongfully taken from them, and AFSCME 75 would keep its ill-gotten, unconstitutional gains. This inequitable result—innocents punished and wrongdoers rewarded—weighs heavily against recognizing a good faith defense to First Amendment claims. Plaintiffs, public-sector employees, are the victims here, not AFSCME 75. *Janus*, 138 S. Ct. at 2486.

Second, a good faith defense would subvert the rule that legal principles articulated by the Supreme Court are retroactively applicable. *Lugar v. Edmondson oil Co.,* 457 U.S. 922 (1982). This is true in forced fees cases, just as it is in other types of cases. *See Dean v. Trans World Airlines, Inc.*, 924 F.2d 805, 809 (9th Cir. 1991); *Lowary v. Lexington Local Bd. of Educ.*, 903 F.2d 422, 427-28 (6th Cir. 1990). Accepting a good faith defense would render this rule nugatory because a good faith, but mistaken, reliance on prior case law (here, *Abood*) would serve to deny retroactive application of a subsequent Supreme Court ruling (here, *Janus*) that establishes what the law has always been. *See* note 1, *supra*.

Third, there is no good faith defense to Plaintiffs' demand for a return of monies

wrongfully seized from them because this relief can be characterized as equitable restitution. Even public defendants are not immune to awards of equitable relief. *See Adler v. Pataki*, 185 F.3d 35, 48 (2d Cir. 1999) (qualified immunity did not bar equitable remedy). One remedy sought by Plaintiffs is restitution – a return of monies that rightly belong to them all along that are currently in the wrongful possession of AFSCME 75. *Cf. Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2002) (footnote omitted) (explaining that restitution in equity seeks to "restore to the Plaintiff particular funds or property in the defendant's possession").

Accordingly, AFSCME 75 cannot raise a good faith defense to the relief sought by Plaintiffs. This Court should deny both of AFSCME 75's motions on the ground that the good faith defense is not available when the First Amendment has been violated.

### III.    Alternatively, if the good faith defense were applied to First Amendment violations, AFSCME 75 cannot meet *Clement* standards.

The Ninth Circuit has recognized a good faith defense for private parties in specific, limited circumstances involving due process claims. *Clement v. City of Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008). *Clement* involved a private towing company that towed a car at the direction of police who had failed to give proper due process notice to the owner beforehand. In determining that a good faith defense applied, the court considered specific factors such as whether defendant did its best to follow the law; whether defendant had reason to suspect constitutional challenge to its actions; whether defendant was acting under close government supervision; whether defendant had easy access to relevant facts, and whether defendant had the duty to provide constitutional notice to Plaintiffs. *Id.* at 1097. If the Court were to find that the good faith defense can be raised against First Amendment violations, AFSCME 75 cannot meet

these necessary factors for finding such a defense and is not entitled to a good faith defense against First Amendment violations.

      A.   *AFSCME 75 took no reasonable steps to comply with the law although it had reason to suspect constitutional defect.*

Whether AFSCME 75 "simply followed the law" is a factual matter that is disputed by the parties. AFSCME Brief at 15; Gibson Decl. ¶2, Exhibits A-I. This disputed fact alone prevents the granting of AFSCME 75's request for summary judgment. Indeed, the union had glaring reasons to suspect constitutional challenge to its actions – these very issues were pending in federal court at the time of the alleged conduct, and the unions were aware of such legal issues from the national level to the local level. Gibson Decl. ¶2; *see also Janus*, 138 S. Ct. at 2484-85, 2486.

AFSCME 75 should have known at least since 2012 that forced fees violated the First Amendment, which the Supreme Court reaffirmed in 2014. *See Janus* 138 S. Ct. at 2486; *Harris v. Quinn*, 573 U.S.__, 134 S. Ct. 2618 (2014); *Knox v. SEIU, Local 1000,* 567 U.S. 298 (2012). Even if a good faith defense exists for violations of the First Amendment, that defense fails when the private party knew or should have known that the state law it relied upon was, or could be, constitutionally infirm. *Wyatt v. Cole*, 504 U.S. 158, 168 (1992); *Pinsky v. Duncan*, 79 F.3d 306, 308 (2d Cir. 1996). [5] AFSCME 75's knowledge that forced fees violated, or most likely violated, the First Amendment thus distinguishes this case from cases cited by AFSCME 75. AFSCME Brief at 13-14.

Union defendants in *Janus* relied on *Abood,* but the Court held this reliance to be "misplaced" because "unions have been **<u>on notice</u>** for years regarding [the] Court's misgivings

---

[5] In *Pinsky* the defendants were not on notice or aware that the statutes they used were unconstitutional. *Pinsky*, 79 F.3d at 313.

about *Abood*." *Janus*, 138 S. Ct. at 2484 (citations omitted) (emphasis added); *see* discussion, *supra* at pp. 5-7. Similarly, AFSCME 75 had numerous reasons to know that forced fees statutes violate the First Amendment. *Id*. Indeed, AFSCME 75 is in the same position as its affiliate, AFSCME Council 31, was in *Janus*. There, like AFSCME 75's "reliance on established law" argument here, AFSCME Council 31 argued that it had relied on *Abood* to enter a three year forced fees agreement in 2012, and that overruling *Abood* would deprive it of the benefit of its bargain. *Janus*, 138 S. Ct. at 2484 (quoting *Abood*, 431 U.S. 209 (1977)). This Court should follow the United States Supreme Court's example in rejecting this argument.

As a result, AFSCME 75 acted in reckless disregard of Plaintiffs' First Amendment rights. It is thus not "unfair" for AFSCME 75 to repay the monies it confiscated from Plaintiffs. AFSCME 75 gambled with other people's money and lost. AFSCME should not be rewarded for doing so.

> B. *AFSCME 75 was not acting under "close government supervision," and was in fact in possession of all relevant facts.*

Nor can AFCME 75 assert that it acted under close government supervision or at government instruction in the same way that the private towing company did in *Clement*. State statute allowed for the seizure of fees by the State upon the instruction of AFSCME 75. This is the exact opposite of a private party acting under close government supervision. Instead, here, the private party, AFSCME 75, was instructing and supervising the State. The government's involvement (the wage withholding) was at the union's direction, not the other way around

Thus, an analysis of factors considered by the Court in *Clement* leads to the conclusion that if the good faith defense is going to be applied, AFSCME 75 has not even met the grounds necessary for the application of a good faith defense in any circumstance.

**IV.  Plaintiffs' request for declaratory relief and restitution for AFSCME 75's First Amendment violations prior to *Janus* presents a live controversy – not rendered moot by AFSCME 75's voluntary compliance with *Janus* after June 27, 2018.**

Plaintiffs' claims for declaratory relief and restitution for AFSCME 75's violations prior to *Janus* are not moot. As a threshold matter, the U.S. Supreme Court's rulings on a law's constitutionality only impacts the State's law before it, it does not impact other states' laws automatically. *See, e.g.*, *Waters v. Ricketts*, 798 F.3d 682, 685 (8th Cir. 2015) (citing *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 477–78 (1995)). Accordingly, this Court needs to rule in order for *Janus* to be applied to Oregon's statutes, the collective bargaining agreements here, and the seizure of forced fees from Plaintiffs and the class members. *See* note 2, *supra*.

Yet AFSCME 75 here claims its voluntary compliance with *Janus* moots this case despite the fact that, *Janus* involved Illinois' law, and this case involves Oregon's law. Further, this case involves the application of *Janus* to the forced fee seizures that occurred prior to *Janus* which AFSCME 75 has not returned. AFSCME Brief at 6-10. "[A]s a general rule 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot.'" *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted). But voluntary cessation may moot a case if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (citations omitted). That has not occurred here because the seized forced fees have not been returned. Plaintiffs have received no damages or restitution, or even nominal damages, for the violation of their First Amendment rights

Moreover, the claim for damages or restitution keeps alive the Plaintiffs' request for a declaratory judgment. Even "[w]hen a claim for injunctive relief is barred but a claim for

damages remains, a declaratory judgment as a predicate to a damages award can survive." *Crue v. Aiken*, 370 F.3d 668, 677 (7th Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)); *c.f. Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can then be used as a predicate to further relief, including an injunction."). Given that there is still more relief for this Court to provide, these claims are not moot. *Danielson v.Inslee*, No. 3:18-cv-5206-RJB, 2018 WL 3917937, at *3 (W.D. Wash. Aug. 16, 2018), and *Yohn v. Cal. Teachers Ass'n*, No. 8:17-cv-00202-JLS-DFM, at *6-7 (C.D. Cal. Sept. 28, 2018), are distinguishable because the Plaintiffs did not allege the union was retroactively liable for damages or restitution.

Therefore, AFSCME 75 has not met its burden of establishing mootness. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *N.A.A.C.P., Western Region v. City of Richmond*, 743 F.2d 1346, 1352-53 (9th Cir. 1984).

## CONCLUSION

For the forgoing reasons, this Court should deny AFSCME 75's motion for judgment on the pleadings and motion for summary judgment. Plaintiffs' pleading of sufficient facts to establish AFSCME 75's violation of Plaintiffs' constitutional rights prevents the application of any good faith defense, if it is available at all against First Amendment violations. Further, where, as here, the claims involve damages or restitution, they are not rendered moot by defendant's voluntary compliance.


DATED: December 7, 2018

<u>s/ Jill Gibson</u>

Jill Gibson
Gibson Law Firm, LLC
121 SW Morrison St., 11th Floor
Portland, OR 97204

Tel: 503.686.0486
Fax: 866.511.2585
Email: jill@gibsonlawfirm.org


James G. Abernathy, OSB #161867
JAbernathy@freedomfoundation.com
Rebekah C. Millard, OSB #121199
RMillard@freedomfoundation.com
PO Box 552
Olympia, WA  98507
Tel: 360.956.3482
Fax: 360.352.1874


Milton L. Chappell, DCB #936153 (*pro hac vice* pending)
8001 Braddock Rd, Suite 600
Springfield, VA 22151
Tel: 703-321-8510
Fax: 703-321-9319
Email: mlc@nrtw.org

### CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under the applicable Local Rules because it contains 6119 words, including headings, footnotes, and quotations, but excluding the caption, signature block, exhibits, and any certificates of counsel.

DATES: December 7, 2018                         Respectfully submitted,

By: *s/Jill Gibson*
Jill Gibson

**CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2018, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel/parties of record. I hereby certify that no other parties are to receive notice.


Dated: December 7, 2018

> By: s/ Jill Gibson
> Jill Gibson, OSB # 973581
> 121 SW Morrison St., 11th Floor
> Portland, OR 97204
> Tel: 503.686.0486
> Fax: 866.511.2585
> Email: jill@gibsonlawfirm.org